# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FIRYAL THABATAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-1043 |
| | ) |
| DENIS RICHARD MCDONOUGH, | ) |
| SECRETARY, UNITED STATES | ) |
| DEPARTMENT OF VETERANS AFFAIRS, | ) |
| | ) |
| Serve: | ) |
| | ) |
| Merrick Garland | ) |
| Attorney General | ) |
| U.S. Department of Justice | ) |
| 950 Pennsylvania Ave. NW | ) |
| Washington, DC 20530 | ) |
| | ) |
| Duane A. Evans | ) |
| U.S. Attorney, | ) |
| Eastern District of Louisiana | ) |
| 650 Poydras Street, Suite 1600 | ) |
| New Orleans, Louisiana 70130 | ) |
| | ) |
| Defendant. | ) |

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF
## AND DEMAND FOR JURY TRIAL

Plaintiff Firyal Thabatah, by and through the undersigned counsel, files this Civil Complaint and demand for jury trial against Defendant Denis Richard McDonough, Secretary, United States Department of Veterans Affairs, for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. and pursuant to 28 U.S. Code § 1331.

2. Jurisdiction is proper because Plaintiff has exhausted her administrative remedies.

3. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because a substantial number of the unlawful employment practices alleged in this action took place within this District.

## PARTIES

4. Plaintiff Firyal Thabatah is a resident of Jefferson Parish, Louisiana, and has worked as a Registered Nurse for the U.S. Department of Veterans Affairs Southeast Louisiana Veterans Health Care System since September 2017.

5. Denis Richard McDonough is presently the Secretary of the U. S. Department of Veterans Affairs.

## FACTUAL ALLEGATIONS

6. Thabatah is a 46-year-old Muslim, Middle Eastern, Palestinian, female.

7. In or about September 2017, the U.S. Department of Veterans Affairs, New Orleans VA Medical Center hired Thabatah to serve as a Registered Nurse at the Southeast Louisiana Veterans Health Care System's Emergency Department.

8. Thabatah's race, religion, national origin, and sex are apparent in her appearance.

9. At the times relevant to this case, Thabatah was the only member of the Emergency Department who could be seen regularly praying multiple times during her shift. Thabatah also covers her head in accordance with her religious practices.

2

10. Thabatah's direct supervisor was Emergency Department Nursing Manager David Ronnenburg and her second-level supervisor was Associate Nurse Executive Nicele Shine. Trechell Clavo was Thabatah's Assistant Nurse Manager.

11. In or around July 2020, until in or around October 2020, Thabatah took time off from work to help her son recover from an illness. During that time, Thabatah became aware that Ronnenburg made the statement, "Shine is going to fire Firyal because she hasn't returned to work," referring to Thabatah.

12. In the Emergency Department, patients would regularly make Islamophobic remarks toward Thabatah. On or around March 11, 2021, Ronnenburg failed to assist Thabatah with an agitated patient. While Thabatah was stationed in triage in the Emergency Department, a patient went on a vicious Islamophobic tirade, threatening to kill Thabatah based on her race, religion, and national origin. That patient became increasingly agitated while Thabatah attempted to take his vitals and he refused to allow Thabatah to treat him, while continuing to threaten her life.

13. Thabatah realized that she was unable to continue to assist the agitated patient given his threatening behavior, so Thabatah stepped out of the triage room and went to Ronnenburg's office, about ten feet away, to alert him to the fact that she could not assist this patient. Thabatah then went to the VA police office to ask for assistance with the patient, but no one was in that office.

14. When Thabatah returned to triage, about five minutes after she alerted Ronnenburg to the situation with the threatening patient, Thabatah realized that Ronnenburg had not left his office to assist her.

15. Thabatah has seen Ronnenburg personally wheel patients to acute care in the past, and Thabatah was expecting Ronnenburg to step in to assist with this situation. Trechell Clavo stated that if she were in the same position as Ronnenburg, that she would have gotten up and assisted Thabatah. Bender did not believe that Ronnenburg handled the situation with the threatening patient correctly.

16. Thabatah called another nurse, Brent Dantin, to help her with the threatening patient. Dantin was unable to assist Thabatah because Dantin had another patient in his triage room.  Eventually, Lindsey Millet arrived at the triage room to escort the patient to acute care.

17. While in acute care, the threatening patient was sedated with B-52, a last resort sedation cocktail reserved for patients who are violently agitated. The patient was physically subdued by Veterans Affairs police for the safety of the nursing staff. The patient was also put under an involuntary admission (PEC) because he was deemed dangerous.  Providers give agitated and combative patients B-52 shots only if they are a danger to staff or themselves.

18. Thabatah reported the incident with the threatening patient to Trechell Clavo and Thabatah submitted an incident report to her management and to the Veterans Affairs Police.

19. Thabatah later verbalized to Ronnenburg that she was upset that he did not assist her when she came to him for help with the threatening patient. In response, Ronnenburg dismissed her from his office.

20. On or around March 11, 2021, Ronnenburg also stated to Emergency Department nurse Amalia Zarak about Thabatah that, "Firyal was never in any danger and the patient was an old frail man. Firyal was never in harm's way."

21. On or around March 13, 2021, another nurse jokingly asked if the VA should pat Thabatah down for bombs when she arrives at work.

22. On or around March 14, 2021, coworker Frank Jones walked in on Thabatah praying. Jones apologized in the moment, but later jokingly asked Thabatah if she was making bombs rather than praying. Thabatah was stunned upon hearing these jokes as the idea that Muslim and/or Middle Eastern people possess or make bombs is a harmful stereotype.

23. On or around March 14, 2021, Thabatah emailed Ronnenburg, Shine, and Clavo asking for a temporary reassignment because of the discrimination she faced in the Emergency Department. Thabatah no longer felt safe working in this environment.

24. Beginning on March 14, 2021, Nicele Shine, Registered Nurse Manager, Dr. Edwina Whitney-Jones, Utilization Management Department Manager, and Ronnenburg blocked Thabatah's attempts to leave the Emergency Department.

25. On or around March 18, 2021, Thabatah met with Ronnenburg, Shine, Clavo, and Thabatah's union president, Dr. Yolan Bender, to request a temporary reassignment outside of the Emergency Department. Thabatah became emotional during this meeting and left the room for a few minutes to collect herself. Upon Thabatah's return, Thabatah overheard Ronnenburg say, "I don't care about her pity party," referring to Thabatah.  Bender and Clavo thought that Ronnenburg's "pity party" comment was inappropriate.  Thabatah felt

that hearing her valid concerns about working in the VA due to discrimination based on her race, national origin, and religion, be minimized by Ronnenburg and referred to as a "pity party" by him, was extremely upsetting. Thabatah told Ronnenburg that she overheard his "pity party" remark, and he responded to her by saying, "Good!"

26. Dr. Bender told Ronnnenburg that his "pity party" comment was out of line. Shine responded by telling Dr. Bender not to criticize Ronnenburg. Thabatah asked that Ronnenburg be dismissed from the meeting, and eventually Shine agreed. Clavo recalled Ronnenburg storming out of the meeting.

27. Thabatah was hesitant to tell Shine about the jokes her coworkers made out of fear of retaliation. However, Thabatah felt that she needed to disclose these jokes to Shine to help her understand the severity of the situation.

28. Shine agreed to temporarily reassign Thabatah to the pre-op/post-op department on a 60-day detail on or around March 22, 2021.

29. In May 2021, as Thabatah's 60-day detail was ending, Thabatah emailed Associate Director of Patient Care, Ruth Davis asking to be permanently reassigned to the pre/op-post/op department. In this email, Thabatah stated that she did not feel comfortable working in the Emergency Department because the discriminatory comments made by Emergency Department employees to Thabatah had created a hostile environment. Dr. Davis forwarded Thabatah's email to the Equal Employment Opportunity office.

30. On or around May 20, 2021, Thabatah met with Chief of Diversity and Inclusion Lisa Cole. Thabatah disclosed the jokes that her coworkers made about her, but Thabatah did

not identify those coworkers out of fear of retaliation. Thabatah also disclosed Ronnenburg's "pity party" comment to Cole.

31. On or around May 26, 2021, Thabatah returned to the Emergency Department, because Shine had refused to permanently reassign her.

32. On or around June 1, 2021, Monique Turner began investigating Thabatah's complaints. Turner asked some of Thabatah's coworkers questions such as, "did you ever tell a nurse you should pat her down to make sure she didn't have bombs on her?" and, "did you ever walk in on a nurse praying and ask her if she was making bombs?"

33. Thabatah's coworkers began reaching out to her about the investigation, as it was obvious that Thabatah, a Muslim, and the only person who visibly prays at work, made the complaint that was being investigated.

34. Thabatah complained to Clavo about how the investigation into her concerns was being mishandled by management in a way that humiliated Thabatah and made her feel even more alienated from the rest of the Emergency Department. Thabatah's complaints should have been investigated while she was on her first detail outside of the Emergency Department. The investigation into Thabatah's concerns was intentionally conducted in a way to embarrass Thabatah in retaliation for her complaints of discrimination.

35. Thabatah never learned the results of the investigation into her concerns. Thabatah was contacted by Monique Turner via telephone and only told that the investigation had concluded, and it was determined that Thabatah had to return to the Emergency Department.

36. On or around June 2, 2021, Shine again agreed to temporarily reassign Thabatah to pre-op/post-op. Temporary job reassignments at Southeast Louisiana Veterans Health Care System are usually disciplinary in nature. Thabatah's coworkers in pre-op/post-op assumed that she had been disciplined when she was detailed there a second time.

37. On or about June 4, 2021, a male VA police officer, Officer Brister, asked Thabatah, "Hey, do you have any bombs on you today?"

38. Thabatah's management failed to take appropriate corrective action when on or around March 13 and 14, 2021, and June 4, 2021, Thabatah reported two of her coworkers and a Police Officer made harassing jokes about Thabatah possessing and/or making bombs.

39. In June 2021, Thabatah applied for a remote pre-screener position in the Utilization Management Department in an attempt to leave the Emergency Department.

40. On June 11, 2021, Thabatah interviewed for the pre-screener position.

41. On or about July 14, 2021, management failed to select Thabatah for the pre-screener position. Thabatah learned that no one was selected for the pre-screener position and that position was being re-listed.

42. On or around August 25, 2021, Thabatah applied for the re-listed pre-screener position.

43. On or around September 2021, Thabatah received a notification that she was found eligible for the re-listed pre-screener position and that Thabatah would be contacted for an interview.

44. In or around September 2021, the hiring official for the re-listed pre-screener position, Dr. Edwina Whitney-Jones failed to contact Thabatah for an interview for that

position although Thabatah was notified that she was eligible and would be contacted for an interview.

45. Thabatah learned that Dr. Jones asked Ronnenburg to serve on the interview panel for the pre-screener position. This is highly unusual because the position is not under the Nursing Department/Administration but instead is under the Chief of Staff.

46. On November 5, 2021, management again failed to select Thabatah for the Registered Nurse Pre-Access Admission Reviewer position, CBST-11212612-21-KMB. On November 5, 2021, Thabatah received a notification that another applicant was selected for the re-listed pre-screener position.

47. On September 6, 7, 10, and 11, 2021, Shine disapproved Thabatah's requests for authorized absence (paid leave) during Hurricane IDA.

48. During his time as her supervisor, Ronnenburg did not approve Thabatah's request for schedule changes but approved those requests for his favored nurses, who are white and/or male.

49. On December 6, 2021, Thabatah contacted the EEO office to file a complaint. Thabatah submitted an informal EEO complaint on December 22, 2021, listing religion, race, national origin, sex, and reprisal as bases of discrimination.

50. The majority of nurses that have been hired by Ronnenburg are white and/or male. Within the last twelve-month period six racial minority female nurses have quit working at the VA. For example, on several occasions, Ronnenburg has allowed Hem Sheth, a white male, to change his schedule to work his preferred shift rotation, even though the rotation from which Sheth transferred was severely understaffed. Ronnenburg does not

similarly allow minority female employees the opportunity to switch shifts without providing coverage.

51. On or around January 14, 2022, Ronnenburg disapproved Thabatah's request for leave for February 25 and 26, 2022, but approved white nurses and male nurses to take leave on those days.

52. On January 17, 2022, Ronnenburg disapproved Thabatah's request to work holiday hours and approved two white male nurses to work that day.

53. On or about January 19, 2022, Thabatah filed a formal EEO complaint; Case No. 2003-629-2022-143081.

54. On or about July 28, 2022, Thabatah submitted a formal request for a hearing to the EEOC New Orleans Field Office.

55. On or about July 28, 2022, the EEOC issued Thabatah a Notice of Receipt of Hearing Request.

56. On August 12, 2022, Thabatah received an email from Nicele Shine stating that Thabatah was perceiving the review of restraint documentation as a "targeted, personal, malicious attack" when Thabatah raised concerns about being the only nurse singled out for incomplete patient documentation although another white female registered nurse also cared for the same patient. Thabatah had also raised concerns that Ronnenburg failed to assist her when she requested help with that patient documentation.

57. On or around October 07, 2022, Thabatah submitted her initial request for annual leave in VATAS in March and in April 2023, for religious purposes, specifically for fasting during the month of Ramadan, as Thabatah is a Muslim.

58. On November 9, 2022, Shine blocked Thabatah from completing a required training and sent an email to Thabatah accusing her of choosing not to verbally communicate with Thabatah's management team to complete that required training related to a CAP survey WBGQ-B 2022-05 specimen.

59. Thabatah never received her additional holiday pay for working on November 24, 2022, and despite sending multiple emails to her management requesting their assistance, Thabatah received no response to any of her emails.

60. Della Caples also informed Nicele Shine and David Ronnenburg that she would have to work overtime to facilitate Thabatah's completion of that training since Thabatah's supervisors were not allowing her to leave her duty station to complete that required training.

61. On December 01, 2022, Ronnenburg denied Thabatah's request for annual leave. On December 2, 2022, Thabatah emailed Caples and Bender informing them that she placed leave requests in VATAS for annual leave in March and in April 2023, for religious purposes, specifically for fasting during the month of Ramadan and that Thabatah's leave requests were denied by Ronnenburg.

62. Thabatah informed Caples and Bender in her December 2, 2022, email that Ronnenburg was aware that the leave she requested in 2023 is for religious observance. Bender responded to Thabatah by instructing Thabatah to resubmit her leave request.

63. On December 05, 2022, Thabatah resubmitted her leave request for religious purposes, however Ronnenburg denied Thabatah's leave request a second time on that same day.

64. On December 7, 2022, Thabatah notified Bender via email that Thabatah attempted to resubmit her leave request, and that David Ronnenburg continued to deny her request for leave for religious observance in 2023.

65. On December 13, 2022, Thabatah was attempting to discharge a patient in Emergency Department Acute Care Room No. 4 but was unable to discharge that patient until the resident signed the provider discharge note. Thabatah discharged that patient immediately after the Resident signed the provider discharge note. At that time, Charge RN Kyle Kruse commented to staff present that he was "sick of working with these lazy nurses" and that he had "only one more week left to work with her," referring to Thabatah.

## COUNT I
### Sex Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964,
### 42 U.S.C. § 2000(e), *et seq*.

66. Thabatah incorporates the allegations in the foregoing paragraphs as though alleged herein.

67. At all relevant times herein, 42 U.S.C. § 2000(e) was in full force and effect.

68. Thabatah is an "employee" as the term is defined at 42 U.S.C. § 2000(e)(f).

69. The United States Department of Veterans Affairs is an "employer" as the term is defined at 42 U.S.C. § 2000(e)(b).

70. Thabatah is a woman.

71. The United States Department of Veterans Affairs violated Title VII of the Civil Rights Act of 1964, by subjecting Thabatah to discrimination and a hostile work environment on the basis of Thabatah's sex.

72. Thabatah has suffered damages as a result of The United States Department of Veterans Affairs' unlawful actions.

73. For the United States Department of Veterans Affairs' willful violations of the Title VII of the Civil Rights Act of 1964, Thabatah is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic damages, compensatory damages, reasonable attorney's fees, interest on all damages, and any other relief that this Court deems just and equitable.

## COUNT II
### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*.

74. Thabatah incorporates the allegations in the foregoing paragraphs as though alleged herein.

75. At all relevant times herein, 42 U.S.C. § 2000(e) was in full force and effect.

76. Thabatah is an "employee" as the term is defined at 42 U.S.C. § 2000(e)(f).

77. The United States Department of Veterans Affairs is an "employer" as the term is defined at 42 U.S.C. § 2000(e)(b).

78. Thabatah is of Middle Eastern descent.

79. The United States Department of Veterans Affairs violated Title VII of the Civil Rights Act of 1964, by subjecting Thabatah to discrimination and a hostile work environment on the basis of Thabatah's race.

80. Thabatah has suffered damages as a result of The United States Department of Veterans Affairs' unlawful actions.

81. For the United States Department of Veterans Affairs' willful violations of the Title VII of the Civil Rights Act of 1964, Thabatah is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic damages, compensatory damages, reasonable attorney's fees, interest on all damages, and any other relief that this Court deems just and equitable.

**COUNT III**
**Religious Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000(e),** *et seq.*

82. Thabatah incorporates the allegations in the foregoing paragraphs as though alleged herein.

83. At all relevant times herein, 42 U.S.C. § 2000(e) was in full force and effect.

84. Thabatah is an "employee" as the term is defined at 42 U.S.C. § 2000(e)(f).

85. The United States Department of Veterans Affairs is an "employer" as the term is defined at 42 U.S.C. § 2000(e)(b).

86. Thabatah is Muslim.

87. The United States Department of Veterans Affairs violated Title VII of the Civil Rights Act of 1964, by subjecting Thabatah to discrimination and a hostile work environment on the basis of Thabatah's religion.

88. Thabatah has suffered damages as a result of The United States Department of Veterans Affairs' unlawful actions.

89. For the United States Department of Veterans Affairs' willful violations of the Title VII of the Civil Rights Act of 1964, Thabatah is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic damages,

compensatory damages, reasonable attorney's fees, interest on all damages, and any other relief that this Court deems just and equitable.

## COUNT IV
### National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*

90. Thabatah incorporates the allegations in the foregoing paragraphs as though alleged herein.

91. At all relevant times herein, 42 U.S.C. § 2000(e) was in full force and effect.

92. Thabatah is an "employee" as the term is defined at 42 U.S.C. § 2000(e)(f).

93. The United States Department of Veterans Affairs is an "employer" as the term is defined at 42 U.S.C. § 2000(e)(b).

94. Thabatah is of Palestinian descent.

95. The United States Department of Veterans Affairs violated Title VII of the Civil Rights Act of 1964, by subjecting Thabatah to discrimination and a hostile work environment on the basis of Thabatah's national origin.

96. Thabatah has suffered damages as a result of The United States Department of Veterans Affairs' unlawful actions.

97. For the United States Department of Veterans Affairs' willful violations of the Title VII of the Civil Rights Act of 1964, Thabatah is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic damages, compensatory damages, reasonable attorney's fees, interest on all damages, and any other relief that this Court deems just and equitable.

**COUNT V**
**Retaliation in Violation of**
**Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000(e), *et seq*.**
**(Protected Activity)**

98. Thabatah incorporates the allegations in the foregoing paragraphs as though alleged herein.

99. At all relevant times herein, 42 U.S.C. § 2000(e) was in full force and effect.

100. Thabatah is an "employee" as the term is defined at 42 U.S.C. § 2000(e)(f).

101. The United States Department of Veterans Affairs is an "employer" as the term is defined at 42 U.S.C. § 2000(e)(b).

102. The United States Department of Veterans Affairs violated Title VII of the Civil Rights Act of 1964, by retaliating against Thabatah and subjecting her to a hostile work environment on the basis of Thabatah's protected activity.

103. Thabatah initiated EEO contact on December 6, 2021.

104. Thabatah submitted an informal EEO complaint on December 22, 2021, listing religion, race, national origin, sex, and reprisal as bases of discrimination.

105. On January 19, 2022, Thabatah filed a formal EEO complaint; Case No. 2003-629-2022-143081.

106. On or about July 28, 2022, Thabatah submitted a formal request for a hearing to the EEOC New Orleans Field Office.

107. Thabatah has suffered damages as a result of The United States Department of Veterans Affairs' unlawful actions.

108.     For the United States Department of Veterans Affairs' willful violations of the Title VII of the Civil Rights Act of 1964, Thabatah is entitled to such legal or equitable relief as will effectuate the purposes of Title VII, including but not limited to economic damages, compensatory damages, reasonable attorney's fees, interest on all damages, and any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Firyal Thabatah respectfully requests that the Court enter judgment in her favor and award to her the following relief.

A.  Judgment against the Defendant in the amount of economic damages, compensatory damages and liquidated damages;

B.  Pre-judgment interest;

C.  Equitable relief;

D.  Interest due on unpaid wages;

E.  Reasonable attorneys' fees and the costs of this action, and

F.  Any other relief this Honorable Court deems just and proper to award.

## JURY DEMAND

Plaintiff demands a jury for all issues to be so tried.

Respectfully submitted,

*[signature: John H. Musser]*

_____
John H. Musser, V (#22545)
Tarryn E. Walsh (#36072)
Brittney I. Esie (#39174)
Murphy, Rogers, Sloss, Gambel & Tompkins
701 Poydras Street, Suite 400
New Orleans, Louisiana 70139
Phone: (504) 274-3840
Facsimile: (504) 523-5574
jmusser@mrsnola.com
twalsh@mrsnola.com
besie@mrsnola.com

R. Scott Oswald (*pro hac vice pending*)
Kellee Kruse (*pro hac vice pending*)
The Employment Law Group, P.C.
1717 K Street, N.W., Suite 1110
Washington, D.C. 20006
Phone: (202) 261-2822
Facsimile: (202) 261-2835
soswald@employmentlawgroup.com
kkruse@employmentlawgroup.com

*Counsel for Plaintiff*

4886-8506-3513, v. 1