**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**FIRYAL THABATAH**                                    **CIVIL ACTION**

**VERSUS**                                                       **NO.   23-1043**

**DENIS R. MCDONOUGH, SECRETARY, UNITED**        **SECTION: "G"(2)**
**STATES DEPARTMENT OF VETERAN AFFAIRS**

<u>**ORDER AND REASONS**</u>

In this case, Plaintiff Firyal Thabatah ("Plaintiff") claims she was subject to race, sex, national origin, and religious discrimination constituting a hostile work environment and retaliation while employed at the U.S. Department of Veterans Affairs Southeast Louisiana Veterans Health Care System.[1] Before the Court is Defendant Denis Richard McDonough's ("Defendant") Motion for Summary Judgment.[2] Plaintiff opposes the motion.[3] For the reasons discussed in more detail below, the Court finds there are genuine issues of material fact in dispute regarding Plaintiff's hostile work environment claim based on her race, national origin, and religion. However, there are no material facts as to certain other claims. Therefore, considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants summary judgment in part and denies it in part.

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 32.

[3] Rec. Doc. 36.

1

# I. Background

Plaintiff has worked as a Registered Nurse for the U.S. Department of Veterans Affairs Southeast Louisiana Veterans Health Care System since September 2017.[4] Defendant is presently the Secretary of the U.S. Department of Veteran Affairs (the "VA").[5] Plaintiff is a 46-year-old Muslim, Middle Eastern, Palestinian female who, at the time of the alleged events in this case, worked as a nurse in the Emergency Department and later Primary Care Unit of the VA Medical Center in New Orleans.[6] Plaintiff claims her race, religion, national origin, and sex are apparent in her appearance and that she was the only employee that could regularly be seen praying multiple times during her shift.[7] In the Complaint, Plaintiff alleges discrimination in the workplace based on sex, race, religion, and national origin under Title VII of the Civil Rights Act of 1964.[8] Plaintiff additionally claims the VA retaliated against Plaintiff and subjected her to a hostile work environment on the basis of Plaintiff's protected characteristics.[9] The Responsible Management Officials that Plaintiff alleges are responsible for the alleged harassment and conduct at issue are: (1) David Ronnenburg ("Ronnenburg"), who is a white male; (2) Nicele Shine ("Shine"), who is

---

[4] Rec. Doc. 1 at 1.

[5] *Id.*

[6] *Id.* at 3. Plaintiff still works in the same facility in the "flow" department. Rec. Doc. 32-2 at 1 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 1 (Plaintiff's Statement of Undisputed Facts).

[7] Rec. Doc. 1 at 2.

[8] *Id.* at 12–15.

[9] *Id.* at 16.

an African American female; and (3) Dr. Edwina Whitney-Jones ("Dr. Whitney-Jones"), who is an African American female.[10]

In support of Plaintiff's contention she was subject to a hostile work environment and retaliation, Plaintiff cites the following eighteen events:[11]

> 1. In 2020, [Plaintiff] became aware that David Ronnenburg, Registered Nurse Manager, made the statement, Shine is going to fire Firyal because "she hasn't returned to work."

> 2. On March 11, 2021, Ronnenburg failed to assist [Plaintiff] with an agitated patient when she requested and dismissed her concerns when she addressed his refusal to help; he also stated, "Firyal was never in any danger and the patient was an old frail man and Firyal was never in harm's way."

> 3. On March 12–13, 2021, and June 4, 2021, management failed to take appropriate corrective action when [Plaintiff] reported two of her coworkers and a Police Officer made harassing jokes about [Plaintiff] possessing and/or making bombs.

> 4. Since March 14, 2021, Nicele Shine (NS) Registered Nurse Manager, Dr. Edwina Whitney-Jones (EWJ), Utilization Management Department Manager, and Ronnenburg blocked [Plaintiff's] attempts to leave the Emergency Department (ED).

> 5. On March 18, 2021, David Ronnenburg responded, "I don't care about your pity party" when [Plaintiff] reported a patient threatened to kill her due to her race/national origin/religion and coworkers joked about her due to her race/national origin/religion.

> 6. On June 1, 2021, management intentionally investigated [Plaintiff's] harassment concerns in a way which embarrassed, humiliated, and alienated her in the presence of her coworkers.

---

[10] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 1–2 (Plaintiff's Statement of Undisputed Facts).

[11] Rec. Doc. 32-2 at 2–5 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2–4 (Plaintiff's Statement of Undisputed Facts).

7. On July 14, 2021, management failed to select [Plaintiff] for the position of Pre-Screener and the position was relisted after [Plaintiff] was interviewed.

8. In September 2021, [Dr. Whitney-Jones] failed to interview [Plaintiff] for the Pre-Screener position although she was notified that she was eligible and would be contacted for an interview.

9. On unspecified dates, [Plaintiff] overheard Ronnenburg sexually harass two female nurses by commenting, "You would have sex with me, right?" and then to another nurse, "Well, if I give it to you what are you going to do for me" in reference to approving a leave request.

10. On November 5, 2021, management failed to select [Plaintiff] for Registered Nurse Pre Access Admission Reviewer, CBST-11212612-21-KMB.

11. On unspecified dates, Ronnenburg did not approve [Plaintiff's] request for schedule changes as his favored nurses, who are mostly white nurses and males.

12. On September 6, 7, 10 and 11, 2021, NS disapproved [Plaintiff's] request for authorized absence paid leave during Hurricane Ida.

13. On January 14, 2022, Ronnenburg disapproved [Plaintiff's] request for leave for February 25 and 26, 2022, but approved the white nurses and male nurses to take leave that day.

14. On January 17, 2022, Ronnenburg disapproved [Plaintiff's] request to work holiday hours and approved two white male nurses to work that day.

15. On August 12, 2022, [Plaintiff] received an email from Nicele Shine stating that [Plaintiff] is perceiving the review of restraint documentation as a targeted, personal, malicious attack, when [Plaintiff] raised concerns about being the only nurse singled out for incomplete patient documentation although another white female RN also cared for the same patient. Additionally, [Plaintiff] raised concerns that Ronnenburg failed to assist her when she requested help with the patient documentation.

16. On November 9, 2022, Nicele Shine blocked [Plaintiff] from completing a required training and sent an email to [Plaintiff] accusing her of choosing not to verbally communicate with [Plaintiff's] management team to complete that required training.

17. On December 13, 2022, Charge RN Kyle Kruse commented to staff present that he was "sick of working with these lazy nurses" and that he had "only one more week left to work with her" referring to [Plaintiff].

18. On December 1, 2022 and December 5, 2022, David Ronnenburg denied [Plaintiff's] VATAS annual leave request for the months of March and April 2023, for fasting for religious purposes during the month of Ramadan.

Plaintiff made initial contact with an EEO counselor on December 6, 2021, with an initial interview occurring on December 10, 2021.[12] Plaintiff has filed no other EEO claims or complaints.[13] However, Plaintiff filed two motions to amend her claims, both of which were accepted by the EEO.[14] Based on the amendments, the EEO investigated Plaintiff's claims that she was subject to a hostile work environment based on her religion, race, national origin, and sex and her claim that she was subject to reprisal for making the complaint.[15]

Plaintiff originally filed a Complaint in this Court on March 24, 2024.[16] Defendant filed an answer on July 2, 2023.[17] Defendant then filed the instant Motion for Summary Judgment on

---

[12] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[13] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[14] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[15] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[16] Rec. Doc. 1.

[17] Rec. Doc. 21.

June 11, 2024,[18] and Plaintiff filed an opposition on June 24, 2024.[19] Defendants filed a reply to the opposition on June 26, 2024.[20]

## II. Parties' Arguments

### A.    Defendant's Arguments in Support of the Motion

Defendant argues that the Court should dismiss Plaintiff's claims for multiple reasons.[21] First, Defendant claims that Plaintiff cannot make a prima facie showing of a hostile work environment or retaliation.[22] Specifically, with respect to the hostile work environment claim, Defendant claims that Plaintiff cannot establish that: (1) the harassment was based on a protected characteristic, (2) the harassment affected a term, condition, or privilege of employment, or (3) Plaintiff's employer knew or should have known of the harassment and failed to take prompt remedial action.[23]

With respect to Events 1, 2, 4, 5, 6, 7, 8, 10, 16 and 17, Defendant asserts it is undisputed that there is no evidence, other than Plaintiff's own subjective speculation and belief, suggesting the events occurred because of Plaintiff's protected characteristic[24] Defendant asserts this is also

---

[18] Rec. Doc. 32.

[19] Rec. Doc. 36.

[20] Rec. Doc 37.

[21] Rec. Doc. 32-1 at 1.

[22] *Id.* at 9–11.

[23] *Id.* at 3.

[24] *Id.* at 5.

true for Events 11 through 14 and Event 18, which all relate to leave requests.[25] Additionally, for those events, there are legitimate, non-discriminatory reasons for the denials of the leave requests.[26] With respect to Event 15, Defendant asserts Plaintiff admits it was not related to her protected characteristics as she admitted she did not properly maintain a patient's chart.[27] Similarly, regarding Event 16, Defendant contends Plaintiff admits she received the training that she was allegedly blocked from taking.[28] As for Event 3, Defendant argues Plaintiff admits the "pity party" comment referred to her crying and not her protected characteristics.[29] Therefore, Defendant argues there is no evidence, other than Plaintiff's own subjective beliefs, that any of her claims were based upon her protected characteristics.[30]

Next, Defendant contends Plaintiff cannot show any alleged harassment affected a term, condition, or privilege of her employment.[31] Defendant argues the "pity party" comment was a single isolated incident that is objectively not offensive.[32] With respect to Event 3, the comments about bombs, Defendant asserts the VA investigated the claims and found them to be

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 6.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 7.

[32] *Id.*

unsubstantiated.[33]  Even assuming the comments were true, Defendant asserts these two jokes were made over the course of one day and never occurred again.[34]  As for the racial slurs by the patient, Defendant argues this was a single instance and the patient never threatened Plaintiff. Defendant argues the comments do not constitute a hostile work environment because they were not made by a VA employee.[35]

Defendant also argues Plaintiff cannot show the VA knew of the harassment and failed to take prompt remedial actions.[36]  Defendant asserts the VA investigated the jokes allegedly made by co-workers and moved Plaintiff to a new department.[37]  Defendant contends that Ronnenburg had to undergo sensitivity training following the "pity party" comment and he has not made any insensitive comments since.[38]

Next, Defendant contends the VA had a legitimate, non-discriminatory reason for all of the conduct in question.[39]  Defendant contends Plaintiff was not selected for the Registered Nurse Pre Access Admission Reviewer position (Event 10) because she lacked clinical RN experience and experience with programs that were vital to the position.[40]  As for the denials of leave requests,

---

[33] *Id.*

[34] *Id.*

[35] *Id.* at 8.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 9.

[39] *Id.*

[40] *Id.* at 10.

Defendant asserts Plaintiff was denied leave for legitimate, non-discriminatory reasons.[41] Moreover, Defendant asserts there is no evidence to show pretext.[42]

Finally, Defendant asserts the claims that have not been administratively exhausted must be dismissed because the Court lacks subject-matter jurisdiction over them.[43] Defendant argues Plaintiff has only exhausted her claim related to the 18 identified Events, and any other claims must be dismissed.[44]

**B.     *Plaintiff's Arguments in Opposition to the Motion***

Plaintiff argues that the VA subjected her to discrimination and a hostile work environment because of her race, religion, and national origin.[45] Plaintiff does not discuss the sex discrimination claim in the Opposition.[46] Plaintiff notes that whether a protected individual has been subject to a hostile work environment and discrimination is ill-suited for summary judgment resolution because of the fact-intensive nature of the inquiry.[47] Plaintiff's claims in this case are based upon eighteen events, each presenting a unique circumstance.[48]

---

[41] *Id.* at 10–11.

[42] *Id.* at 11.

[43] *Id.* at 12.

[44] *Id.*

[45] Rec. Doc 36 at 1.

[46] *Id.*

[47] *Id.* at 2.

[48] *Id.*

Plaintiff contends there are material facts in dispute as to her hostile work environment claim.[49] Plaintiff asserts "Events 2 through 6 are inextricably tied together and, whether viewed separately or together, state a case for a hostile workplace."[50] Plaintiff argues Event 2 demonstrates a hostile work environment because Ronnenburg refused to assist her with the hostile patient and dismissed her concerns when she addressed his refusal to help.[51] Plaintiff asserts this event was "but one of a series of actions where management not only failed to assist and protect [her], but also minimized and ignored the seriousness of derogatory statements made about her because she is a Muslim and Mid-Eastern."[52] Plaintiff also argues Event 3 demonstrates a hostile work environment because she was subjected to three incidents of harassing jokes by coworkers and a police office within a few days of each other.[53] Plaintiff asserts the VA's investigation of Event 3 was wholly inadequate, as it occurred over two months after she notified management of the comments and Ronnenburg continued to dismiss and minimize Plaintiff's concerns.[54] Plaintiff contends the "pity party" comment discussed in Event 5 demonstrates a hostile work environment because Ronnenburg made the comment during a meeting about the threats made by the patient.[55] Plaintiff asserts Event 6 demonstrates a hostile work environment because management

---

[49] *Id.* at 3.

[50] *Id.* at 4.

[51] *Id.*

[52] *Id.* at 6.

[53] *Id.* at 8.

[54] *Id.* at 11–12.

[55] *Id.* at 12–13.

intentionally investigated the harassment concerns in a way that embarrassed, humiliated, and alienated Plaintiff.[56] Finally, Plaintiff asserts Event 4 demonstrates a hostile work environment because management blocked her attempts to transfer from the Emergency Department after she complained of the harassment.[57]

Plaintiff also argues that summary judgment must be denied with respect to her claim she was discriminated against when she was not selected for the Registered Nurse Pre Access Admission Reviewer (Events 7, 8, and 10).[58] Plaintiff asserts that her experience was not properly credited, and if it had been, she would have obtained at least the same or a higher grid score than the person who was offered the job.[59] Under these circumstances, Plaintiff suggests she has stated a prima facie case that Defendant discriminated against her by failing to interview her or offer her the position.[60]

Next, Plaintiff contends that summary judgment must be denied with respect to her claim that she was discriminated against when Ronnenburg denied her requests for schedule changes and leave (Events 11, 13, 14, and 18).[61] Plaintiff contends these decisions were based on her protected status because she was treated differently than other employees.[62] With respect to Event 18,

---

[56] *Id.* at 14.

[57] *Id.* at 15–16.

[58] *Id.* at 17.

[59] *Id.* at 18.

[60] *Id.*

[61] *Id.* at 20–24.

[62] *Id.* at 22.

Plaintiff also suggests that to justify the denial of her request for leave during Ramadan Defendant would have to show that the granting of this accommodation would impose an undue hardship.[63]

Finally, with respect to Event 15 (being singled out for an error in a patient's chart), Plaintiff acknowledges it would not constitute a viable discrimination claim if it were an isolated incident.[64] However, Plaintiff asserts that the conduct demonstrates a pattern of hostility toward her.[65]

### C.   *Defendant's Arguments in Further Support of the Motion*

In reply Defendant claims that Plaintiff has not rebutted the fact that Plaintiff did not establish a prima facie case of a hostile work environment and did not present legally sufficient evidence that Defendant's non-discriminatory, legitimate reasons are pretextual in nature.[66] Defendant argues Plaintiff does not dispute that she did not suffer sex-discrimination and that the claim is specifically withdrawn in the Opposition.[67]  Because Plaintiff did not specifically mention Events 1, 9, 12, 16, or 17 in the opposition, Defendant argues that this Court should dismiss all of those claims as a matter of law.[68]

---

[63] *Id.* at 24.

[64] *Id.* at 23.

[65] *Id.*

[66] Rec. Doc. 37 at 1.

[67] *Id.*

[68] *Id.* at 2.

As for the other events, Defendant claims that Event 14 must be dismissed as a matter of law because Plaintiff admits that she requested January 17, 2022 off so her claim she was discriminated against by not being allowed to work on that day cannot be true.[69] In relation to Events 11 and 13, Defendant claims that Plaintiff has cited no evidence to show the white nurses were given days off instead of her, and so the Court should dismiss those events.[70] With respect Event 15, Defendant claims that Plaintiff does not meaningfully dispute that there was a legitimate, non-discriminatory basis for the email.[71] Plaintiff admits she did not do the restraint charting and does not dispute the email was sent because she failed to do the charting.[72] Defendant lastly claims that Event 18 should be dismissed because Plaintiff does not dispute that Defendants had a legitimate, non-discriminatory reason for denying her extended leave for Ramadan.[73]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[74] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations

---

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.* at 3.

[73] *Id.*

[74] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

or weighing the evidence."[75] All reasonable inferences are drawn in favor of the nonmoving party.[76] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[77] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[78] The nonmoving party may not rest upon the pleadings.[79] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[80]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[81] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at

---

[75] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

[76] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[77] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[78] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.*, 391 U.S. 253, 289 (1968)).

[79] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[80] *See id.*; *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998).

[81] *Celotex Corp.*, 477 U.S. at 323.

trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[82] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[83] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[84]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[85] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[86]

## IV. Analysis

In the Complaint, Plaintiff alleged national origin, religion, race, and sex discrimination under Title VII of the Civil Rights Act of 1964.[87] Plaintiff also claimed retaliation in violation of the same Title.[88] However, Plaintiff did not address sex discrimination in the opposition to the

---

[82] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[83] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[84] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[85] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[86] *Morris*, 144 F.3d at 380.

[87] Rec. Doc. 1 at 12-15.

[88] *Id.* at 16.

instant motion and specifically contemplates withdrawing that claim.[89] Plaintiff also does not address Events 1, 9, 12, 16, or 17 in the opposition.[90] Plaintiff has not provided any briefing or argument to support an inference that these events created a hostile work environment, were discriminatory, or were retaliatory. Accordingly, the Court dismisses any claim related to Events 1, 9, 12, 16, and 17. The Court proceeds to address Plaintiff's hostile work environment claim and her discrimination/retaliation claims.

## A.    *Hostile Work Environment*

Title VII makes it unlawful for employers to require "people to work in a discriminatorily hostile or abusive environment."[91] "A hostile work environment claim is composed of a series of

---

[89] Rec. Doc. 36 at 1 n.1.

[90] *See id.* Events 1, 9, 12, 16, and 17 are:

1. In 2020, [Plaintiff] became aware that David Ronnenburg ("Ronnenburg"), Registered Nurse Manager, made the statement, [Nicele] Shine is going to fire Firyal because "she hasn't returned to work."

9. On unspecified dates, [Plaintiff] overheard Ronnenburg sexually harass two female nurses by commenting, "You would have sex with me, right?" and then to another nurse, "Well, if I give it to you what are you going to do for me" in reference to approving a leave request.

12. On September 6, 7, 10 and 11, 2021, NS disapproved [Plaintiff]'s request for authorized absence paid leave during Hurricane Ida.

16. On November 9, 2022, Nicele Shine blocked [Plaintiff] from completing a required training and sent an email to [Plaintiff] accusing her of choosing not to verbally communicate with [Plaintiff]'s management team to complete that required training.

17. On December 13, 2022, Charge RN Kyle Kruse commented to staff present that he was "sick of working with these lazy nurses" and that he had "only one more week left to work with her" referring to [Plaintiff].

[91] *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

separate acts that collectively constitute one "'unlawful employment practice.'"[92] To establish a hostile work environment, Plaintiff must show: "(1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action."[93] The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*[94] does not apply to a hostile work environment claim.[95]

Defendant does not dispute the first two elements of the hostile work environment claim: Plaintiff was a member of a protected group, and she was subject to unwelcomed harassment.[96] For the reasons discussed in more detail below, the Court finds there are genuine disputes of material fact for each of the remaining elements of Plaintiff's hostile work environment claim.

To establish the third element, Plaintiff must show the harassment was based on her membership in a protected class. In this case, Plaintiff is alleging she experienced harassment

---

[92] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).

[93] *Gibson v. Verizon Servs. Org., Inc.,* 498 F. App'x 391, 394 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

[94] 411 U.S. 792, 802 (1973).

[95] *Lewis v. Board of Supervisors of Louisiana State Univ.*, No. 21-198, 2023 WL 8370096, at *8 (M.D. La. Dec. 1, 2023) (citing *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000)) (explaining that the *McDonnell Douglas* framework cannot apply to a hostile work environment sexual harassment claim because "there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted"), *rev'd on other grounds. See also Abbt v. City of Houston*, 28 F.4th 601 (5th Cir. 2022) (applying *McDonnell Douglas* burden-shifting framework to a retaliation claim but not a hostile work environment claim).

[96] *See* Rec. Doc. 32-1 at 4.

based on her race, religion, and national origin.[97]  The inception of many of Plaintiff's complaints

was a racist rant a patient engaged in directed towards Plaintiff on March 11, 2021.[98]  In this rant,

the patient threatened to kill Plaintiff stating, "I am not f***ing cooperating with you, you f***ing

Muslim, you are a Muslim rat, a f***ing Muslim cockroach. I ought to blow your ass up and kill

you."[99]  In response, Plaintiff requested assistance from Ronnenburg by visiting him in his office,

which was only ten feet away.[100]  Plaintiff then went to the VA police office to ask for assistance,

but the office was empty.[101]  When Plaintiff returned to the triage room a few minutes later,

Ronnenburg had not come to assist her.[102]  Plaintiff attests that she was left alone with the patient

for 15 minutes after reporting the interaction, until a charge nurse arrived to escort the patient back

to acute care.[103]

On March 13, 2021, two days after the patient's racist rant, Plaintiff states that "a nurse

jokingly asked," if Plaintiff needed to be "pat[ted]… down for bombs."[104]  The next day, March

14, 2021, Plaintiff attests that nurse Frank Jones walked in while Plaintiff was praying and stated

---

[97] Rec. Doc 36 at 1. As discussed earlier, Plaintiff withdrew her sex discrimination claim by not addressing it in her opposition to Defendant's Motion for Summary Judgment.

[98] Rec. Doc. 32-8 (May 20, 2022 EEO Affidavit of Plaintiff); Rec. Doc. 32-13 (Police Report).

[99] Rec. Doc. 32-8 at 7 (May 20, 2022 EEO Affidavit of Plaintiff); Rec. Doc. 32-13 (Police Report).

[100] Rec. Doc. 32-8 at 7 (May 20, 2022 EEO Affidavit of Plaintiff).

[101] *Id.*

[102] *Id*.

[103] *Id.*

[104] *Id.* at 9.

that Plaintiff "must have been busy making bombs."[105] On June 4, 2021, Plaintiff attests that a VA police officer asked her if she "ha[d] any bombs on [her] today?"[106] All of these comments appear to relate to Plaintiff's race, religion, and national origin. The VA investigated these incidents and found the bomb comments to be unsubstantiated.[107] However, Plaintiff posits the investigation was wholly inadequate because the employees who allegedly made the comments were not questioned.[108] Therefore, Plaintiff has demonstrated there are facts in dispute regarding whether she was harassed based on a protected characteristic.

To establish the fourth element, Plaintiff must demonstrate the harassment affected a term, condition, or privilege of her employment. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[109] In making this determination, courts evaluate the "totality of the circumstances," which can include the frequency of conduct, the severity of that conduct, whether it was physically threatening or humiliating or

---

[105] *Id.*

[106] *Id.*

[107] Rec. Doc. 32-14 (June 16, 2021 Memorandum).

[108] Rec. Doc. 32-8 at 14–15 (May 20, 2022 EEO Affidavit of Plaintiff).

[109] *West v. City of Houston*, 960 F.3d 736, 741–42 (5th Cir. 2020) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)).

just a mere offensive utterance, and whether the conduct interferes with the employee's work performance.[110] No single factor is determinative.[111]

The parties dispute whether the interaction with the patient was physically threatening. Considering that the patient made a death threat, a reasonable factfinder could conclude that the comments were physically threatening. It is not lost on this Court that the patient was not an employee of the VA, and it is unclear whether Plaintiff alerted Ronnenburg in that moment of the discriminatory tone of the patient's rant. However, Plaintiff's hostile work environment claim is premised not only on the incident itself, but also on her supervisors' response to the incident.

As discussed above, there are facts in dispute regarding whether the "bomb" comments were in fact made. Assuming they were for purposes of summary judgment, these comments strike a demonstrably discriminatory and insulting tone. Plaintiff also attests that she was confronted with hostility from her supervisors when she expressed her concerns and that the supervisors suggested that Plaintiff was lying about the comments being made in the first place.[112]

On March 14, 2021, Plaintiff requested a transfer out of the Emergency Department because of the ridicule and mistreatment she claims she was subject to.[113] On March 18, 2021, a meeting was held for Plaintiff to share her concerns. During this meeting, Ronnenburg stated "I

---

[110] *Gibson*, 498 F. App'x at 394 (quoting *Ramsey*, 286 F.3d at 268).

[111] *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

[112] Rec. Doc. 32-8 at 15 (May 20, 2022 EEO Affidavit of Plaintiff).

[113] Rec. Doc. 36-2 at 5 (Email from Plaintiff to Shine).

don't care about your pity party."[114] During his deposition, Ronnenburg admitted to making this comment.[115] Ronnenburg stated that Plaintiff was out of the room when the comment was made, but she heard the comment through a closed door.[116] Defendant suggests this comment is objectively not offensive.[117] Plaintiff contends that this comment was in response to her sharing her experience with the patient's threat and the "bomb" comments.[118] It is true that a "subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment."[119] But considering the comment was made during a meeting specifically called to discuss the alleged harassment, Plaintiff presents more than just her subjective belief that the "pity party" comment was motivated by Plaintiff's race, national origin, or religion.

Plaintiff also argues that her supervisors subjected her to a hostile work environment when they refused to grant multiple leave requests and sent her a targeted email on August 12, 2022. With respect to the denials of leave, Plaintiff suggests that she was treated less favorably than white employees. Plaintiff additionally alleges that on August 12, 2022 she received an email from Shine stating that Plaintiff was mistakenly "perceiving the review of her restraint documentation as a targeted, personal, malicious attack" when Plaintiff raised concerns about being the only nurse

---

[114] Rec. Doc. 32-8 at 2 (May 20, 2022 EEO Affidavit of Plaintiff).

[115] Rec. Doc. 32-7 at 29 (Deposition of Ronnenburg).

[116] *Id.*

[117] Rec. Doc. 32-1 at 7.

[118] Rec. Doc. 32-8 at 2 (May 20, 2022 Affidavit of Plaintiff).

[119] *Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) (quoting *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 106–07 (5th Cir. 2009)).

singled out for incomplete documentation.[120] Plaintiff claims another white, female nurse who failed to document restraint was not singled out for her failure to complete this same documentation.[121] It does not appear the email in question was attached to the Motion for Summary Judgment or the Opposition. Therefore, the Court cannot fully evaluate this claim at this time. Assuming for purposes of summary judgment that Plaintiff was singled out for this conduct, a reasonable factfinder could find that it was motivated by Plaintiff's race, national origin, or religion.

The question of whether the facts of this case, taken in the light most favorable to Plaintiff, establish a severe and pervasive hostile work environment is a close one. In *Johnson v. PRIDE Industries*, the Fifth Circuit held that two incidents using the term "n*****" and "mayete" combined with other, lesser demeaning language and conditions provided sufficient evidence for a factfinder to conclude that a plaintiff's work environment was racially hostile.[122] When taken together, the threats by the patient, three bomb comments, pity party comment, multiple denials of leave, singling out of Plaintiff, and alleged dismissiveness by Plaintiff's supervisors would be sufficient for a reasonable factfinder to conclude that Plaintiff was subject to a hostile work environment based on her race, religion, and national origin. Accordingly, there are facts in dispute regarding whether the harassment affected a term, condition, or privilege of Plaintiff's employment such that summary judgment is not warranted on this element.

---

[120] Rec. Doc. 36 at 23.

[121] Rec. Doc. 32-5 at 76 (Deposition of Plaintiff).

[122] 7 F.4th 392, 403–04 (5th Cir. 2021).

To establish the fifth element, Plaintiff must show her employer knew or should have known of the harassment and failed to take prompt remedial action. To constitute "prompt remedial action" by an employer, the remedial action "must be reasonably calculated to end the harassment."[123] This is "a fact-specific inquiry," as "not every response by an employer will be sufficient to absolve the employer of liability under Title VII."[124] In certain circumstances, the Fifth Circuit has held that an employer took prompt remedial action as a matter of law, such as where, immediately after the reported harassment, the manager separated the plaintiff and harasser and instructed the harasser to stay away.[125]

There is no dispute in this case that Plaintiff's supervisors knew about the harassment that Plaintiff faced. Plaintiff shared the harassment with her supervisors during a March 18, 2021 meeting. Plaintiff was then transferred from the Emergency Department to the Progressive Care Unit for a period of 60 days starting on March 22, 2021.[126] Near the end of the 60-day period, Plaintiff requested to permanently be removed from the Emergency Department,[127] but her request was denied. This denial was levied even after Plaintiff pleaded with her superiors to keep her in the Progressive Care Unit because of the "atmosphere of high tension and hostilities" in the

---

[123] *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 456 (5th Cir. 2024) (quoting *Stewart v. Miss. Transp. Comm'n.*, 586 F.3d 321, 329 (5th Cir. 2009)).

[124] *Id.* (quoting *Williams-Boldware v. Denton County*, 741 F.3d 635, 640 (5th Cir. 2014)).

[125] *Id.* (citing *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999); *Kreamer v. Henry's Towing*, 150 F. App'x 378, 382-83 (5th Cir. 2005)).

[126] Rec. Doc. 36-1 at 25 (Plaintiff's Statement of Undisputed Facts).

[127] Rec. Doc. 36-2 at 21 (May 18, 2021 Email from Plaintiff to Dr. Davis and Shine).

Emergency Department caused by the discriminatory and insensitive comments made to Plaintiff.[128]

In addition, the VA did not start a formal investigation into the comments until early June 2021, a full two months after Plaintiff notified her supervisors of the comments and after Plaintiff had returned to the Emergency Department from the temporary relocation. Plaintiff posits that the investigation was wholly inadequate because the employees who allegedly made the comments were not questioned.[129] With respect to the investigation, Plaintiff told the EEO:

> The investigation began on June 1, 2021. The investigation was not initiated until over two months after notifying Nursing Management of the discriminatory comments. The investigation was also not initiated until after my temporary reassignment to the Pre-op/Post-op Department had concluded and I had returned to the Emergency Department. I did not know and was not informed that an investigation was underway until several coworkers came up to me asking me questions as to why they were being taken into a room and asked questions about a nurse praying and making bombs.
>
> I was blindsided and embarrassed at that time, and I went to my assistant manager Trechell Clavo while crying. I asked her why the Agency would wait over two months after the incident occurred and when I returned to the Emergency Department from my temporary job detail to conduct an investigation. I cried and explained to Trechell that this investigation should have been conducted while I was away from the ED during my temporary job detail, so that I would not have to suffer further alienation, embarrassment and retaliation by coworkers.
>
> Although several of my coworkers were interviewed during the investigation, the two nurses who actually made the inappropriate comments to me were never interviewed. I was later told by a coworker that they overheard David telling Trechell Clavo that he believes that I was lying about the discriminatory comments that were made to me by coworkers. I felt unsupported and vulnerable that David continued to dismiss and disregard my concerns.

---

[128] *Id.*

[129] Rec. Doc. 32-8 at 14–15 (May 20, 2022 EEO Affidavit of Plaintiff).

On June 2, 2021, Nicele contacted me on my cell phone on my day off to notify me that the Agency was conducting an investigation regarding my concerns and that I would be reassigned once again to Pre Op/Post Op Department until the investigation was over. During this phone call, Nicele made several inappropriate comments to me stating that "I have never seen David do anything wrong," to which I replied, "Ms. Shine you heard the "pity party" comment David made about me during our meeting." Ms Shine responded by stating, "that was only one instance." Ms. Shine later implied during the phone call that I was lying about the discriminatory comments made to me by my coworkers when she stated, "I don't believe it." This constant theme of dismissiveness, disregarding and minimizing what I have experienced by nursing management is absolutely unacceptable and deeply hurtful.

For over a year now, I have been subjected to repeated hurtful and harmful actions/comments and retaliatory animus and disregard for my safety and physical and mental well-being by nursing management and nursing administration.[130]

In *Johnson v. Board of Supervisors of Louisiana State University*, the Fifth Circuit found that an investigation commenced 11 days after the plaintiff's report to HR was a prompt remedial action because the defendant immediately separated the plaintiff from the alleged harasser and the investigation was not alleged to be deficient.[131] Unlike *Johnson*, the VA's investigation did not commence until two months after Plaintiff reported the harassment and Plaintiff testified to deficiencies in the investigation. Viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant knew of the harassment and failed to take prompt remedial action. Therefore, because Plaintiff has made a prima facie showing in all five

---

[130] *Id.*

[131] *Johnson*, 90 F.4th at 456 (distinguishing *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298 (6th Cir. 2016)).

elements, Defendant's motion for summary judgment must be denied as to the hostile work environment claim based on Plaintiff's race, religion, and national origin.

## B.   *Discrimination/Retaliation Claims*

Plaintiff claims she was discriminated and/or retaliated against when she was not interviewed or selected for a new position (Events 7, 8, and 10) and denied leave requests (Events 11, 13, 14, and 18). The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging retaliation and discrimination under Title VII.[132] To survive summary judgment under this framework, a plaintiff must first establish a prima facie case of discrimination or retaliation.[133] If the plaintiff can establish a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory purpose for the action.[134] The defendant must point to admissible evidence in the record, but the burden is one of production, not persuasion.[135] Defendants need not show that the employer's decisions were proper or justified, but only that they were not discriminatory.[136] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse

---

[132] *McDonnell Douglas*, 411 U.S. at 802 (creating the *McDonnell Douglas* burden shifting framework).

[133] *Id.* at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[134] *McDonnell Douglas*, 411 U.S. at 802.

[135] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[136] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

employment action.[137] If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show any nondiscriminatory purpose offered by the defendant are merely a pretext for discrimination.[138] A plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[139]

### 1.      Non-Selection Claim (Events 7, 8, and 10)

Plaintiff claims that VA management failed to interview or offer her a position she was qualified for due to discrimination.[140] Under the above *McDonnell Douglas* framework, Plaintiff must first make out a prima facie case of discrimination by showing that: (1) she belongs to a protected category; (2) she applied and was qualified for a position for which the employer was seeking applicants; (3) despite her qualifications, she was not selected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons with Plaintiff's qualifications.[141] Then, the burden shifts to Defendant to produce a legitimate, non-discriminatory reason for not selecting Plaintiff.[142] Last, the burden shifts back to Plaintiff to prove that the reason offered by Defendant was a pretext for discrimination.[143]

---

[137]   *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[138]   *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[139]   *Id.*

[140]   Rec. Doc. 36 at 17.

[141]   *Johnson v. Maestri-Murrell Prop. Mgmt., LLC*, 487 F. App'x 134, 138 (5th Cir. 2012) (citing *McDonnell Douglas*, 411 U.S. at 802).

[142]   *Id.* at 138.

[143]   *Id.*

Plaintiff belongs to a protected category as a Middle Eastern, Muslim woman. Plaintiff has also shown that she applied for the position of Registered Nurse Pre Access Admission Reviewer.[144] However, Plaintiff has not made a prima facie showing that Plaintiff was *qualified* for the position. In evaluating candidates, Dr. Whitney-Jones created a grid system that scored candidates in particular areas of relevant experience.[145] Dr. Whitney-Jones then compared the total summed scores of each applicant to determine who to interview.[146] Plaintiff claims, based on the preferred experience listed in the job posting on the USA Staffing website, she should have received the same total summed score as the candidate who eventually received the job.[147] But as evidenced by Defendant's grid chart,[148] there were additional criteria included by the VA in evaluating candidates that Plaintiff did not have a strong showing in, leading her to have a total summed score of 7, the lowest out of the candidates reflected on the grid chart and 6 points lower than the candidate who was eventually hired.[149] While Plaintiff claims the website job listing did not include those extra criteria, Plaintiff cites no evidence to support a finding that the inclusion of those additional criteria was improper or based on animus towards Plaintiff or her protected characteristics. Thus, Plaintiff has not made a prima facie showing that she was qualified for the

---

[144] Rec. Doc. 32-6 (Deposition of Dr. Whitney-Jones).

[145] *Id.* at 20.

[146] *Id.* at 22.

[147] Rec. Doc. 36 at 18.

[148] Rec. Doc. 32-15 (Chart of Applicants).

[149] *See id.*

job.

Assuming that Plaintiff could make a prima facie showing that she was qualified for the job, the burden would shift to Defendant to provide a non-discriminatory, legitimate reason for failing to hire Plaintiff.[150] Defendant has made such a showing. Defendant asserts that Plaintiff was deficient in two key areas and in the total summed score, which is supported by the data contained in the grid chart of applicants.[151] Additionally, Plaintiff has not presented any facts to demonstrate Defendant's procedure of scoring candidates was pretext for discrimination.[152] Accordingly, there are no material facts in dispute and Defendant is entitled to judgment as a matter of law on the non-selection claim.

### 2. Denial of Leave Requests (Events 11, 13, 14, and 18)

As discussed above, Plaintiff alleges the denials of leave were part of the hostile work environment. It is unclear from the briefing whether Plaintiff was also seeking to raise a standalone discrimination or retaliation claim with respect to the denials of leave. Assuming that she is raising such a claim, the Court addresses whether there are any facts in dispute regarding such a claim. Specifically, Plaintiff alleges:

11. On unspecified dates, Ronnenburg did not approve [Plaintiff's] request for schedule changes as his favored nurses, who are mostly white nurses and males.

---

[150] *McDonnell Douglas*, 411 U.S. at 802.

[151] *See* Rec. Doc 32-1 at 10.

[152] Plaintiff alleges that Ronnenburg, the manager who made the "pity party" comments to Plaintiff, was involved in the hiring process. Rec. Doc. 36 at 19. It is true that Ronnenburg was at least part of the interview panel. Rec. Doc. 36-15 at 26. However, there is no evidence Ronnenburg created the criteria the interview panel used to select candidates to interview or that he was involved in choosing candidates to interview in any capacity, leading to the conclusion his involvement cannot constitute pretext because he was not involved in the decision not to interview Plaintiff.

13. On January 14, 2022, Ronnenburg disapproved [Plaintiff's] request for leave for February 25 and 26, 2022, but approved the white nurses and male nurses to take leave that day.

14. On January 17, 2022, Ronnenburg disapproved [Plaintiff's] request to work holiday hours and approved two white male nurses to work that day.

18. On December 1, 2022 and December 5, 2022, David Ronnenburg denied [Plaintiff's] VATAS annual leave request for the months of March and April 2023, for fasting for religious purposes during the month of Ramadan.[153]

It is unclear to the Court whether Plaintiff is raising these claims under a retaliation or discrimination theory. Therefore, the Court addresses both potential theories.

Under a retaliation theory, Plaintiff must make a prima facie showing that she: (1) engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal connection existed between the protected activity and the adverse employment action.[154] While Plaintiff is not clear in what they allege the protected activity was, for the purposes of this analysis, the Court will assume the protected activity was the March 18, 2021 meeting between Plaintiff and management, where Plaintiff shared the discriminatory comments that were made at her expense. The Court will also assume that all of the events listed above occurred after this meeting. However, Plaintiff fails to make a prima facie case under prong three. Plaintiff has not demonstrated a causal connection between the protected activity and the adverse employment action.

To survive a motion for summary judgment, a plaintiff must show "a conflict in substantial

---

[153] Rec. Doc. 32-2 at 2–5 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2–4 (Plaintiff's Statement of Undisputed Facts).

[154] *McDaniel v. Shell Oil Co.,* 350 F. App'x 924, 927 (5th Cir. 2009).

evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity."[155] Evidence is considered "substantial" "if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."[156] While other nurses being granted leave and not Plaintiff is potentially unfair, Plaintiff provides no evidence to support the argument the VA would not have denied the leave requests but for Plaintiff reporting the discriminatory comments. For that reason, Plaintiff has not made a prima facie showing of retaliation when it comes to the leave requests.

Under a discrimination theory, Plaintiff must show that: (1) she is a member of a protected group; (2) she is qualified for the position at issue; (3) she suffered some adverse employment action by the employer; and (4) she was treated less favorably than other similarly situated employees outside the protected group.[157] As far as Event 11, Plaintiff does not address these unspecified leave denials in the Opposition.[158] Therefore, it is unclear if Plaintiff was treated less favorably than other employees in those leave requests, so Plaintiff has failed to satisfy prong four.

For Event 13, Plaintiff claims Ronnenburg disapproved Plaintiff's request for leave on February 25 and 26, 2022, but approved white nurses' leave on those dates.[159] With respect to

---

[155] *Brown v. Wal-Mart Stores E., L.P.,* 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (internal citations and quotation marks omitted).

[156] *Id.* (internal citations and quotations omitted).

[157] *Terry v. Fed. Bureau of Prisons,* No. 23-50130, 2023 WL 4196865 at *4 (5th Cir. June 27, 2023) (internal citations and quotations omitted).

[158] *See* Rec. Doc. 36.

[159] Rec. Doc. 36-1 at 20.

31

February 25, 2022, the Leave Record indicates that Plaintiff was granted sick leave for that date.[160] The Leave Record does not reflect the individuals Plaintiff claims were given leave over her were actually granted leave that day.[161] Plaintiff has demonstrated no evidence to corroborate her testimony, and, in the face of a Leave Record that reports Plaintiff's leave but not the individuals Plaintiff named, "no reasonable jury could return a verdict for the [Plaintiff]" on this issue.[162] Therefore, Plaintiff has not made a prima facie showing they were treated less favorably than other similarly situated employees.

Similarly, for Event 14, a day for which Plaintiff's testifies she requested to work, the Agency's Weekly Time Schedule reflects a "D" under Plaintiff's name for January 17, 2022.[163] Defendant claims and Plaintiff does not dispute that a "D" means "do not schedule."[164] Thus, again, other than Plaintiff's own testimony, Plaintiff has presented no corroborating evidence that she requested to work on January 17, 2022, and in the face of a Weekly Time Schedule reflecting she requested to take the day off, "no reasonable jury could return a verdict for the [Plaintiff]" on this issue.[165] Again, Plaintiff has not made a prima facie showing she was treated less favorably than other similarly situated employees.

---

[160] Rec. Doc. 32-17 (Leave Record).

[161] *Id.* These individuals were Amaila Zarak and Kyle Kruse.

[162] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[163] Rec. Doc 32-16 at 16 (Weekly Schedule).

[164] Rec. Doc. 32-1 at 10.

[165] *Anderson,* 477 U.S. at 248.

For Event 18 (denial of leave during Ramadan), Plaintiff mentions in passing at the end of the Opposition the standard for granting religious accommodations in the workplace.[166] Plaintiff suggests that to justify the denial of her request for leave during Ramadan Defendant would have to show that the granting of this accommodation would impose an undue hardship.[167] No further briefing was provided on this issue. Thus, the Court does not have sufficient information to rule on this issue and denies the motion to the extent that it seeks dismissal of any claim related to Event 18.

## **V. Conclusion**

For the reasons discussed above, Plaintiff abandoned any claim for sex discrimination and any claim related to Events 1, 9, 12, 16, or 17 by not addressing them in the opposition to the instant motion. Therefore, the Court grants summary judgment and dismisses those claims. The Court also finds that there are no material facts in dispute with respect to Plaintiff's standalone discrimination/retaliation claims for non-selection (Events 7, 8, and 10) and the denial of leave requests (Events 11, 13, and 14). Therefore, the Court grants summary judgment and dismisses those claims. The Court finds that there are genuine issues of material fact in dispute regarding Plaintiff's hostile work environment claim based on her race, national origin and religion. The Court has not been presented with sufficient information to rule on a claim that Plaintiff's religious

---

[166] Rec. Doc. 36 at 24.

[167] *Id.*

freedoms were violated when she was denied leave for Ramadan (Event 18). Therefore, the Court denies summary judgment as to those claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[168] is **GRANTED IN PART** and **DENIED IN PART.** The motion for summary judgment is granted as to Plaintiff's sex discrimination claim, any claim related to Events 1, 9, 12, 16, or 17, and any standalone discrimination/retaliation claims for non-selection (Events 7, 8, and 10) and the denial of leave requests (Events 11, 13, and 14). The motion is denied in all other respects.

**NEW ORLEANS, LOUISIANA,** this <u>30th</u> day of July, 2024.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[168] Rec. Doc. 32.