UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FIRYAL THABATAH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1043** |
| **DOUGLAS COLLINS, SECRETARY, UNITED STATES DEPARTMENT OF VETERAN AFFAIRS** | **SECTION: "G"(2)** |

## ORDER AND REASONS

In this case, Plaintiff Firyal Thabatah ("Plaintiff") claims she was subject to race, sex, national origin, and religious discrimination constituting a hostile work environment and retaliation while employed at the U.S. Department of Veterans Affairs Southeast Louisiana Veterans Health Care System.[1] On July 31, 2024, this Court issued an Order[2] granting Defendant Douglas Collins' ("Defendant") Motion for Summary Judgment in part,[3] and only Plaintiff's claim of a hostile work environment based on her race, national origin, and religion remains pending.[4] Before the Court is Defendant's Motion for Partial Summary Judgment on Backpay.[5]

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 46.

[3] Rec. Doc. 32. Plaintiff originally sued Denis Richard McDonough in his official capacity of Secretary of the U.S. Department of Veterans Affairs. VA Secretary Collins is automatically substituted as defendant in place of former VA Secretary Denis McDonough by operation of Fed. R. Civ. P. 25(d).

[4] Rec. Doc. 46 at 33.

[5] Rec. Doc. 76.

1

Plaintiff opposes the motion.[6] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, this Court denies Defendant's Motion for Partial Summary Judgment on Backpay.

## I. Background

Plaintiff has worked as a Registered Nurse for the U.S. Department of Veterans Affairs Southeast Louisiana Veterans Health Care System since September 2017.[7] Defendant is presently the Secretary of the U.S. Department of Veteran Affairs (the "VA").[8] Plaintiff is a 46-year-old Muslim, Middle Eastern, Palestinian female who, at the time of the alleged events in this case, worked as a nurse in the Emergency Department ("ED") and later Primary Care Unit of the VA Medical Center in New Orleans.[9] Plaintiff claims her race, religion, national origin, and sex are apparent in her appearance and that she was the only employee that could regularly be seen praying multiple times during her shift.[10] In the Complaint, Plaintiff alleged discrimination in the workplace based on sex, race, religion, and national origin under Title VII of the Civil Rights Act of 1964.[11] Plaintiff additionally claimed the VA retaliated against Plaintiff and subjected her to a

---

[6] Rec. Doc. 77.

[7] Rec. Doc. 1 at 1.

[8] *Id.*

[9] *Id.* at 3. Plaintiff still works in the same facility in the "flow" department. Rec. Doc. 32-2 at 1 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 1 (Plaintiff's Statement of Undisputed Facts).

[10] Rec. Doc. 1 at 2.

[11] *Id.* at 12–15.

hostile work environment on the basis of Plaintiff's protected characteristics.[12] The Responsible Management Officials that Plaintiff alleges are responsible for the alleged harassment and conduct at issue are: (1) David Ronnenburg ("Ronnenburg"), who is a white male; (2) Nicele Shine ("Shine"), who is an African American female; and (3) Dr. Edwina Whitney-Jones ("Dr. Whitney-Jones"), who is an African American female.[13]

Plaintiff made initial contact with a VA Equal Employment Opportunity Office ("EEOO") counselor on December 6, 2021, with an initial interview occurring on December 10, 2021.[14] Plaintiff has filed no other EEO claims or complaints.[15] However, Plaintiff filed two motions to amend her claims, both of which were accepted by the EEOO.[16] Based on the amendments, the EEOO investigated Plaintiff's claims that she was subject to a hostile work environment based on her religion, race, national origin, and sex and her claim that she was subject to reprisal for making the complaint.[17]

---

[12] *Id.* at 16.

[13] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 1–2 (Plaintiff's Statement of Undisputed Facts).

[14] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[15] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[16] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

[17] Rec. Doc. 32-2 at 2 (Defendant's Statement of Undisputed Facts); Rec. Doc. 36-1 at 2 (Plaintiff's Statement of Undisputed Facts).

On July 31, 2024, this Court, issued an order granting Defendant's Motion for Summary Judgment[18] in part and dismissing Plaintiff's sex discrimination claims, (Events 1, 9, 12, 16, or 17 as laid out in the Complaint), as well as any standalone discrimination or retaliation claims for non-selection (Events 7, 8, and 10 in the Complaint) and the claim regarding the denial of leave requests (Events 11, 13, and 14 in the Complaint).[19] The Court found there were genuine issues of material fact in dispute precluding summary judgment on Plaintiff's hostile work environment claim based on her race, national origin, and religion.[20]

On January 21, 2025, Defendant filed the instant Motion for Partial Summary Judgment on the issue of back pay.[21] Plaintiff filed an Opposition on January 28, 2025.[22] Defendant filed a Reply on February 3, 2025.[23]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion*

In support of the Motion,[24] Defendant asserts Plaintiff's formal complaint filed with the EEOO never alleged "constructive discharge, discriminatory demotion, involuntary transfer, or

---

[18] Rec. Doc. 32.

[19] Rec. Doc. 46 at 33.

[20] *Id.*

[21] Rec. Doc. 76.

[22] Rec. Doc. 77.

[23] Rec. Doc. 78.

[24] Rec. Doc. 76-3.

4


accompanying loss of pay."[25] Defendant similarly argues the Complaint filed in this Court never alleges "constructive discharge or a discriminatory demotion to a position with less pay at the VA."[26] Defendant urges Title VII back pay is not available in the absence of constructive discharge.[27]

Defendant asserts there are "two procedural bars" to Plaintiff's pursuit of a constructive discharge claim at trial.[28] First, Defendant avers Plaintiff never raised a constructive discharge claim in her EEO complaint, foreclosing Plaintiff's ability to now pursue that claim in court.[29] Second, Defendant claims, even if Plaintiff had administratively presented a claim of constructive discharge to the EEOO, Plaintiff has not asserted sufficient, plausible facts to support her claim in the Complaint filed in this Court.[30]

Defendant moves on to argue, "[e]ven if these procedural bars didn't exist, [Plaintiff] lacks evidence to suggest any genuine disputes of material fact on a constructive-discharge cause of action."[31] Defendant asserts Plaintiff lacks evidence of aggravating factors beyond discrimination

---

[25] *Id.* at 2 (citations omitted).

[26] *Id.* (citations omitted).

[27] *Id.* at 5.

[28] *Id.* at 6.

[29] *Id.* Defendant is claiming Plaintiff did not "administratively exhaust" this claim, precluding its availability in this suit.

[30] *Id.*

[31] *Id.* at 8.

alone to create a genuine dispute of material fact on the question of constructive discharge.[32] Defendant points out Plaintiff actually alleges Defendant discriminated against her by blocking her requests for transfer, not forcing a transfer upon her.[33] Defendant asserts Plaintiff could have stayed in the ED "doing the same duties, for the same pay, and under the same supervisor both before and after the alleged creation of a hostile work environment."[34] Just because Plaintiff chose to do otherwise, Defendant argues, does not lead to constructive discharge or demotion necessary to succeed on a back pay claim under Title VII.[35]

### B.    *Plaintiff's Arguments in Opposition*

Plaintiff begins by asserting Supreme Court precedent supports the proposition that when there is a finding of unlawful discrimination, back pay is an integral part of remedying such a situation.[36] Plaintiff moves on to address Defendant's arguments that Plaintiff's EEO complaint did not administratively exhaust the constructive discharge claims.[37] Plaintiff claims, in determining whether claims have been exhausted in an EEO complaint, the scope of the complaint "should be construed liberally," in that the complaint should not be evaluated on the scope of the charges themselves, but by the scope the subsequent investigation could reasonably be expected

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 8–9.

[35] *Id.* at 9.

[36] Rec. Doc. 77 at 4–5 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975)).

[37] *Id.* at 6.

to grow out of the charges.[38] Plaintiff argues, even though her allegations do not specifically include the term constructive discharge, the EEO complaint was sufficient to implicate such a claim and, if not, the investigation into her claims could reasonably be expected to grow to an investigation into constructive discharge.[39] Particularly, Plaintiff points to her May 2022 affidavit submitted to the EEOO where Plaintiff claims she "clearly indicated that she desperately needed to leave the ED as a result of the intolerable treatment to which she had been subjected" eight months before she secured another position within the VA.[40] Thus, Plaintiff argues, she successfully exhausted her administrative remedies before filing suit on the issue of back pay.

Plaintiff moves on to assert the Complaint filed in this Court and the evidence already presented, given a fair reading, demonstrate "the treatment she received by her supervisors compelled her to leave her position in [the] ED and take another position within the VA."[41] Plaintiff claims it is clear from the undisputed and disputed material facts in the Final Pretrial Order[42] that Plaintiff, in December of 2022, was able to finally secure another position by transferring to the "patient-flow" department at the VA hospital.[43] Plaintiff argues all of these facts, in conjunction, gave Defendant fair notice of Plaintiff's constructive discharge claim.[44]

---

[38] *Id.* at 7 (internal citations omitted).

[39] *See id.* at 8.

[40] *Id.*

[41] *Id.* at 10.

[42] *Id.*

[43] *Id.* at 11.

[44] *Id.* at 12.

7

Lastly, Plaintiff avers a reasonable jury will likely find Defendant liable for Plaintiff's constructive discharge, and that a hostile work environment charge is usually a precursor to a constructive discharge claim.[45] However, Plaintiff admits a "constructive discharge claim requires a greater degree of harassment than that required by a hostile environment claim."[46] Plaintiff argues an employee feeling compelled to resign can support a constructive discharge claim, further which Plaintiff says is what occurred in this case.[47] Plaintiff asserts she has pled and established sufficient facts to prove a hostile work environment, and it is up to a jury to determine if those conditions were so difficult or unpleasant as to drive Plaintiff to feel compelled to resign.[48]

C.  *Defendant's Arguments in Reply*

In Reply,[49] Defendant argues Plaintiff does not dispute there exists settled caselaw that back pay is unavailable in the absence of an allegation or showing of constructive discharge.[50] Defendant reiterates its argument Plaintiff failed to exhaust or allege a constructive discharge claim in Plaintiff's EEO complaint.[51] Defendant asserts Plaintiff "couldn't allege a constructive discharge (or constructive demotion) in her pre-November 4, 2022 claims and amendments (nor could such a claim reasonably grow out of what she asserted) because she was still working in the

---

[45] *Id.*

[46] *Id.* at 13 (internal citations omitted).

[47] *See id.*

[48] *Id.* at 14.

[49] Rec. Doc. 78.

[50] *See id.* at 1.

[51] *Id.* at 2.

ED when they were filed."[52] Defendant admits Plaintiff amended her EEO complaint in December 2022, after accepting an offer to leave the ED, but maintains Plaintiff failed to allege a constructive discharge in her amendment.[53] Even if the Court concludes Plaintiff exhausted a constructive discharge claim with the EEO, Defendant goes on to argue, Plaintiff "still lacks sufficient evidence to establish any genuine disputes to warrant a jury trial on the claim."[54] Defendant claims Plaintiff must demonstrate something greater than just a hostile work environment to sustain a claim of constructive discharge, and Plaintiff has failed to demonstrate a genuine dispute of material fact on this issue.[55]

### III. Legal Standard

*A.    Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[57] All reasonable inferences are drawn in favor of the nonmoving

---

[52] *Id.*

[53] *Id.* at 3.

[54] *Id.*

[55] *Id.* at 5.

[56] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[57] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

9

party.[58] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[59] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[60] The nonmoving party may not rest upon the pleadings.[61] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[62]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[63] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[64] If the moving party satisfies its initial burden, the burden shifts to

---

[58] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[59] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[60] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.*, 391 U.S. 253, 289 (1968)).

[61] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[62] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[63] *Celotex Corp.*, 477 U.S. at 323.

[64] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[65] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[66]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[67] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[68]

### B. Title VII Back Pay

The right to back pay for victims of unlawful discrimination is derived from Section 706(g) of the Civil Rights Act of 1964, as amended 42 U.S.C. Section 2000e–5(g). Section 2000e–5(g)(1) reads, in pertinent part:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons

---

[65] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[66] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[67] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[68] *Morris*, 144 F.3d at 380.

discriminated against shall operate to reduce the back pay otherwise allowable.

Under this Section, the Supreme Court has noted "back pay is not an automatic remedy, but is equitable in nature and may be invoked in the sound discretion of the district court."[69] The remedial purpose of the statute generally permits back pay relief in all but "special circumstances."[70]

In the Fifth Circuit and others, "back pay is not available where the plaintiff was not actually or constructively discharged."[71] In this case, Plaintiff is not arguing she was actually discharged, thus, this Court focuses on constructive discharge. In order to demonstrate constructive discharge under Title VII, two basic elements must be met: (1) Plaintiff must prove she was discriminated against by her employer "to the point where a reasonable person in [her] position would have felt compelled to resign," and (2) that she actually resigned.[72] Thus, a showing of constructive discharge requires both an employee's decision to leave and precipitating conduct on behalf of the employer.[73]

As the Supreme Court made clear in *Green v. Brennan*, it is not required a plaintiff demonstrate subjective intent on behalf of their employers in causing their resignation, but only

---

[69] *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988) (citation omitted).

[70] *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937 (5th Cir. 1996).

[71] *Desport v. Shamrock Energy Sols., LLC*, 2021 WL 5907701, at *8 (E.D. La., 2021) (C.J., Brown) (citing *Boehms v. Cromwell*, 139 F.3d 452, 461 (5th Cir. 2006)); *Spencer v. Wal-Mart Stores*, 469 F.3d 311, 317 (3d Cir. 2006)).

[72] *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citations omitted).

[73] *Id.*

that the discrimination the plaintiff experienced would have led to a reasonable person to feel compelled to resign.[74] The Supreme Court explained "[w]e do not . . . require an employee [to] come forward with proof—proof that would often be difficult to allege plausibly—that not only was the discrimination so bad that [the plaintiff] had to quit, but also that [the plaintiff's] quitting was his employer's plan all along."[75]

Courts in the Fifth Circuit have been instructed to examine the following factors in determining whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.[76]

This Court notes some of these factors—particularly the sixth factor, as far as it requires a showing of "calculat[ion]" on behalf of the employer to encourage resignation—conflicts with Supreme Court precedent in *Green* cited above, which did away with any subjective intent requirement for a showing of constructive discharge.[77] Other circuits, as well as the concurring opinion in *Green*, agree any factors or tests encompassing a subjective intent element are contrary to the holding in *Green*.[78] Thus, this Court considers the factors above with attention to whether the discrimination

---

[74] *See id.* at 560.

[75] *Id.*

[76] *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (internal citations omitted).

[77] *Green,* 578 U.S. at 555 (citations omitted).

[78] *See Green*, 578 U.S. at 575 (Alito, J., concurring) ("It is abundantly clear that the majority has abandoned the discriminatory-intent requirement[.]"); *see also U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*,

was objectively "so bad that [plaintiff] had to quit,"[79] without regard to "calculation" or subjective intent on behalf of Defendant.

## IV. Analysis

### A.     *Administrative Exhaustion*

In order to successfully bring a claim under Title VII in this Court, Plaintiff is required to have administratively exhausted her claims in the EEO complaint.[80] Considering a showing of constructive discharge is necessary for an award of back pay, the parties agree Plaintiff must have administratively exhausted a claim for constructive discharge with the EEOO before bringing such a claim in this Court.[81] Defendant takes issue with the fact Plaintiff "never used the term 'constructive discharge' or 'constructive demotion' in her complaint" with the EEOO, asserting Plaintiff did not adequately allege constructive discharge at the administrative level to exhaust the claim successfully.[82]

---

860 F.3d 131, 144 (4th Cir. 2017) (explaining the Supreme Court in *Green* "clearly articulated" the standard for constructive discharge to include "objective intolerability," but not "deliberateness"); *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 700 (8th Cir. 2021) (noting "*Green* makes clear that the employee is not required to show that the employer subjectively intended for the employee to quit[.]").

[79] *Green*, 578 U.S. at 560.

[80] *See Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 508 (5th Cir. 2024) (explaining, before a plaintiff may seek relief under Title VII in federal court, plaintiff must exhaust their claims in an EEOC charge).

[81] This position is confirmed by this Court's finding in *Desport v. Shamrock Energy Sols.*, where this Court explained "several circuits, including the Fifth Circuit, have held back pay is not available where the plaintiff was not actually *or constructively* discharged." 2021 WL 5907701, at *8 (Dec. 14, 2021) (C.J., Brown) (emphasis added).

[82] Rec. Doc. 78 at 3 (citing Rec. Doc. 1).

But in the Fifth Circuit, "the magic words 'constructive discharge'" do not need to appear in an EEO complaint for a finding of administrative exhaustion.[83] Further, "[t]o determine whether a Title VII claim has been exhausted, [courts] construe the EEO charge in its broadest reasonable sense and ask whether the claim can reasonably be expected to grow out of the charge of discrimination."[84]

While Defendant is correct to point out Plaintiff's EEO complaint does not include the "magic words" of constructive discharge, her affidavit submitted to the EEOO in the compliant process contains enough information for a claim of constructive discharge to reasonably grow. As Plaintiff points out, in her May 2022 affidavit, Plaintiff explains how she attempted to leave the ED because of the "harassing, threating, and discriminatory comments made by [her] coworkers toward [her] following" an incident where a patient made racist remarks to her and threatened to kill her.[85] During the incident, Plaintiff stated she felt Ronnenburg and her other coworkers "refused to assist [her]," leading Plaintiff to feel she "was no longer safe in the Emergency Department[.]"[86] Plaintiff did not keep the fact she felt unsafe in the ED to herself, as outlined in

---

[83] *Ayorinde*, 121 F.4th at 508 (*Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018)).

[84] *Davenport*, 891 F.3d at 167.

[85] Rec. Doc. 77 at 8 (citing Rec. Doc 32-8 at 11).

[86] *Id.* (citing Rec. Doc. 32-8 at 11).

15

her affidavit. Plaintiff alleges she requested "assistance in being permanently moved from the ED."[87] It is undisputed Plaintiff did end up leaving the ED, securing another position at the VA.[88]

Constructive discharge requires a finding that: (1) Plaintiff was discriminated against by her employer "to the point where a reasonable person in his position would have felt compelled to resign," and (2) that she actually resigned.[89] Plaintiff did actually resign by moving to another position within the VA. A finding that a reasonable person would have felt compelled to resign could also reasonably grow out of the claims Plaintiff made outlined above. While the magic words of constructive discharge do not appear in the EEO complaint, the alleged harassment she faced and statements Plaintiff wanted assistance being *permanently moved* from the ED leads to the conclusion Plaintiff administratively exhausted her claim for constructive discharge.[90]

**B.**     ***Whether There are Material Facts in Dispute as to the Alleged Constructive Discharge***

In addition to challenging whether Plaintiff administratively exhausted her claim for constructive discharge, Defendant asserts, even if this Court finds Plaintiff administratively exhausted the constructive discharge claim, there does not exist a genuine dispute of material fact on the issue, meaning summary judgment should be awarded in favor of Defendant. As Defendant points out, to demonstrate constructive discharge, Plaintiff must show her "working conditions

---

[87] *Id.* (citing Rec. Doc. 32-8 at 11–12).

[88] *Id.*

[89] *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citations omitted).

[90] Rec. Doc. 77 at 8 (citing Rec. Doc 32-8 at 11).

were so intolerable that a reasonable employee would feel compelled to resign."[91] It is true, as Defendant asserts, discrimination alone, without aggravating factors, does not suffice for a showing of constructive discharge.[92] These aggravating factors must make a reasonable employee feel compelled to resign.[93] While laying out factors that include badgering, harassment, or humiliation by an employer, the Fifth Circuit noted "[w]hether a reasonable employee would feel compelled to resign," ultimately, "depends on the facts of each case[.]"[94]

In this case, Plaintiff outlines the alleged discrimination she faced from her coworkers, including multiple instances coworkers made jokes about whether she was making or possessed bombs.[95] On top of these alleged harassing comments, Plaintiff asserts she reported these comments to her supervisors, and in a meeting with Ronnenburg to discuss them, Ronnenburg told other attendees he "'didn't care about her pity party,'" responding with "good!" when Plaintiff informed Ronnenburg she had heard him.[96] These events occurred following earlier alleged remarks from a coworker, identified by Plaintiff as "Paul," which were purportedly discriminatory in nature regarding her hijab.[97] Plaintiff avers Paul's comments were reported to management by

---

[91] *Faruki v. Parson, S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).

[92] *See* Rec. Doc. 76-3 at 8 (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).

[93] *Barrow*, 10 F.3d at 297.

[94] *Id.*

[95] Rec. Doc. 32-8 at 13.

[96] Rec. Doc. 32-8.

[97] *Id.* at 8–9.

17

other employees before Plaintiff alleges she was pressured to file a complaint.[98] Plaintiff claims Paul was never reassigned to a different department while being investigated, and Plaintiff was forced to work with him even after Paul was on notice of the complaint Plaintiff filed.[99] In addition to these allegations, Plaintiff explains she feels as though Ronnenburg and other coworkers "failed to meaningfully assist [her] with an unruly patient who subjected [her] to a racist tirade and who threatened to kill [her]."[100] Plaintiff shares she "no longer felt safe in the Emergency Department" after this incident and alleged lack of aid.[101] Plaintiff further avers she notified an EEO Officer, Lisa Cole, she was "afraid of naming [her] coworkers who made discriminatory comments because [she] was afraid of experiencing retaliation."[102]

All of these charges point toward a genuine dispute of material fact on whether a reasonable employee in Plaintiff's position would have felt compelled to resign.[103] Reviewing the facts outlined above in the light most favorable to Plaintiff, Plaintiff has presented evidence of

---

[98] *Id.*

[99] *Id.* at 9.

[100] *Id.* at 6.

[101] *Id.* at 11.

[102] *Id.* at 12.

[103] In their motion, Defendant takes issue with the fact Plaintiff sought and received a voluntary transfer away from the ED, arguing Plaintiff could have continued working for the ED, but "[s]he just chose otherwise." Rec. Doc. 76-3 at 8–9. But that illustrates exactly the question that goes to the heart of Plaintiff's constructive discharge claim. The fact Plaintiff asked for a transfer is, in fact, critical to Plaintiff's claim. To demonstrate constructive discharge, Plaintiff must show she actually resigned and that she felt compelled to do so. *Faruki*, 123 F.3d at 319. Plaintiff's voluntary and eventual successful transfer is a demonstration of actual resignation, at issue is whether that "choice" was one compelled by Defendant.

constructive discharge through actions that go beyond mere harassment, leading her to allegedly feel unsafe in the ED and request and eventually successfully transfer to another department within the VA. The evidence provided is enough to evince a genuine dispute of material fact on the issue of whether Plaintiff was constructively discharged by Defendant from her position in the ED. It is up to a jury to determine the veracity of these allegations and if they rise to the level of constructive discharge justifying back pay. Summary judgment is not warranted in favor of Defendant.

## V. Conclusion

In all, while Plaintiff did not directly use the term constructive discharge, Plaintiff administratively exhausted the claim because a claim of constructive discharge easily grows out of the allegations Plaintiff made in the EEO complaint. Further, Plaintiff demonstrated a genuine dispute of material fact on the issue of constructive discharge due to the fact a reasonable jury could make a finding of constructive discharge based on the evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment on Backpay[104] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 14th day of March, 2025.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[104] Rec. Doc. 76.